UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ANGELA HAMLET, | ) | CASE NO. 20-03622 |
| | ) | |
| DEBTOR. | ) | HON. CAROL A. DOYLE |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **May 28, 2020, at 10:00 a.m., I shall appear telephonically in accordance with Amended General Order 20-03** before the Honorable Carol A. Doyle, Bankruptcy Judge, in Courtroom 742, at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois or before any other Bankruptcy Judge who may be sitting in her place and shall present the **Motion to Dismiss Chapter 7 Case**, a copy of which is attached hereto and is herewith served upon you.

**PURSUANT TO THE COURT'S AMENDED GENERAL ORDER 20-03, FOUND AT https://www.ilnb.uscourts.gov/sites/default/files/general-ordes/Gen-Ord-20-03.pdf, ANY PARTY THAT OBJECTS TO THIS MOTION AND WANTS IT CALLED FOR HEARING IN OPEN COURT MUST FILE A NOTICE OF OBJECTION NO LATER THAN TWO (2) BUSINESS DAYS BEFORE THE PRESENTMENT DATE. A NOTICE OF OBJECTION NEED ONLY SAY THAT THE RESPONDENT OBJECTS TO THE MOTION. NO REASONS NEED TO BE GIVEN FOR THE OBJECTION.**

/s/ David Paul Holtkamp
David Paul Holtkamp, Trial Attorney
OFFICE OF THE U.S. TRUSTEE
219 S. Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 353-5014

## CERTIFICATE OF SERVICE

I, David Paul Holtkamp, Trial Attorney, state that on May 18, 2020, pursuant to Local Rule 9013-1(D) the **Notice Of Motion, Motion To Dismiss Chapter 7 Case And Proposed Form Of Order** were filed and served on all parties, either via the Court's Electronic Notice for Registrants or via U.S. Frist Class Mail, prepaid, as indicated below.

/s/ David Paul Holtkamp

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice**:

| | |
|---|---|
| Michael N. Burke: | bk_il_notice@fisherandshapirolaw.com |
| Frances Gecker: | fgecker@fgllp.com, fgecker@ecf.axosfs.com;csmith@fgllp.com; fgecker@iq7technology.com |
| Patrick S. Layng: | USTPRegion11.ES.ECF@usdoj.gov |
| Thomas Twomey: | ecf@zaplawfirm.com, ttwomey@zaplawfirm.com;ZAPecf@gmail.com |
| Alexander Tynkov: | ecf@zaplawfirm.com, atynkov@zaplawfirm.com,zapecf@gmail.com; r51476@notify.bestcase.com |

**Parties Served via First Class Mail**:

*See Attached Exhibit 1 Declaration of Mailing/Certificate of Service*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ANGELA HAMLET, | ) | CASE NO. 20-03622 |
| | ) | |
| DEBTOR. | ) | HON. CAROL A. DOYLE |

**MOTION TO DISMISS CHAPTER 7 CASE**

NOW COMES PATRICK S. LAYNG, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by his attorney, David Paul Holtkamp, and moves this Court to enter an order dismissing the Chapter 7 case of Angela Hamlet (the "Debtor") under 11 U.S.C. §§ 707(b). In support of the request, the U.S. Trustee alleges as follows:

**I. INTRODUCTION**

1. This case should be dismissed under § 707(b)(1) because the totality of the circumstances demonstrate that the Debtor's case is an abuse of the provisions of chapter 7. *See* 11 U.S.C. § 707(b)(3). Debtor wedged this case into chapter 7 with $891 in disposable income on Schedule J without completing the means test by incorrectly asserting that her debts are not primarily consumer debts.[1] *See* Schedule J, Dkt. No.1. To complicate matters for the Debtor, in addition to $891 in monthly disposable income, the Debtor continues to pay $687.20 per month for her 2018 Mercedes-Benz (plus insurance of $128.00 per month) and $325 per month for voluntary retirement contributions. *See id.*

2. But if the Debtor's disposable income was dedicated to repaying creditors over 5 years, she could repay $53,460 ($891 x 60). That is more than 50% of the Debtor's unsecured debt.

---

[1] The Debtor avoided the means test, which she most likely would have failed, by incorrectly claiming that her debts are primary business debts. Had the Debtor correctly designated her debts as consumer debt, the presumption of abuse would have arisen, and this case would have been dismissed under § 707(b)(2).

1

And if she used the money she voluntarily commits to her retirement fund to repay her debts, as the law requires, she could repay $72,960 ($891 + 325 x 60). That is approximately 75% of her unsecured debt. But instead the Debtor seeks to discharge all her debt while maintaining a luxury vehicle and without any belt-tightening whatsoever. Indeed, the Debtor reaffirmed nearly $40,000 in debt to keep her 2018 Mercedes-Benz. *See* Reaffirmation Agreement, Dkt No. 18. Under the circumstances, this case is an abuse of chapter 7. The Debtor has the ability to repay most of her nearly $94,000 in unsecured debt over 5 years. If the Debtor does not voluntarily convert this case to a case under chapter 13 of the Bankruptcy Code, it should be dismissed under §§ 707(b)(1) and (b)(3) as an abuse.

## II.    BACKGROUND

3.    Movant is the U.S. Trustee and he brings this motion pursuant to § 707(b) of the Bankruptcy Code.

4.    This Court has jurisdiction to determine this motion under 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine under IOP15(A) of the United States District Court for the Northern District of Illinois.

5.    The Debtor filed this case on February 8, 2020, under chapter 7 of the Bankruptcy Code. *See* Petition, Dkt. No. 1.

6.    When the Debtor filed the petition, she asserted that her debts were primarily business debts. *See id.*, at p. 6 of 58.

7.    The Debtor also filed her Schedules and Statement of Financial Affairs with the petition. *See* Dkt. No. 1.

2

8. Schedule I shows that the Debtor has been employed by the Chicago Board of Education for the past 16 years and now earns $6,320.84 in "monthly gross wages, salary, and commissions." *See* Schedule I, Dkt. No. 1, p. 32 of 58. Schedule I also shows that the Debtor receives an additional $2,141 per month in support. *See id.* at p. 33 of 58. That is annual income of $101,542.08 ($6,320.84 + $2,141.00 x 12). Schedules I and J reflect deductions and expenses for "voluntary contributions for retirement plans" in the amount of $325 per month, a car payment of $687.20 for the 2018 Mercedes, and $128 per month to insure that Mercedes. *See* Schedules I and J, Dkt. No. 1, pp. 32-35 of 58.

9. The initial § 341 meeting was scheduled for March 27, 2020. The Deadline to file this motion under 11 U.S.C. § 707(b)(3) is May 26, 2020, and therefore it was timely filed.

### III.    DISCUSSION

10. This case should be dismissed under 11 U.S.C. 707(b)(1). Under § 707(b)(1) the Court should dismiss a chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of chapter 7. *See* 11 U.S.C. § 707(b)(1). Section 707(b)(3) directs courts to consider whether the case is an "abuse" of Chapter 7 based on several factors. Specifically, the court "shall consider" whether the case was filed in "bad faith," or whether "the totality of the circumstances of the debtor's financial situation ... demonstrates abuse." 11 U.S.C. §§ 707(b)(3)(A); 707(b)(3)(B).

**A.    The Debtor's Debts are Primarily Consumer Debts.**

11. Section 707(b) only applies to individual chapter 7 debtors whose debts are primarily consumer debts. *See* 11 U.S.C. § 707(b)(1). Consumer debts are defined as debts "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). It is now well-settled that a debt that secures a mortgage on a primary residence is a consumer debt

3

within that definition. *See In re Kelly,* 841 F.2d 908, 913 (9th Cir. 1988); *In re Whitlock-Young*, 571 B.R. 795, 807 (Bankr. N.D. Ill. 2017); *In re Amoakohene*, 299 B.R. 196, 199 (Bankr. N.D. Ill. 2003). In fact, it "is difficult to conceive of any expenditure that serves a 'family . . . or household purpose' more directly than does the purchase of a home and the making of improvements thereon." *See In re Kelly,* 841 F.2d at 913.

12. The language of the Code also makes clear that whether a debt is a consumer debt is determined by its purpose at the time the debt was incurred. "The operative word in that definition is *incurred*." *In re Victoria*, 2011 Bankr. LEXIS 2505, at *9 (Bankr. N.D. Ala. June 22, 2011). "The fact that the mortgaged property is no longer used for consumer purposes, or that the payment terms were modified does not turn back the clock and change the purpose for which the debt was incurred. A debt is 'incurred' only once, and that is when a debtor becomes liable for its payment." *Id.* "Courts considering the issue have overwhelmingly held that a debt secured by a debtor's personal residence is a consumer debt… Indeed, this has been held to be true even when a debtor initially uses a property as a personal residence but then later uses it as a rental property." *In re Grenardo*, 2012 Bankr. LEXIS 6302, at *24-25 (Bankr. D. Colo. May 2, 2012).

13. While the Debtor here asserts that her debts are primarily business debts, that is erroneous. The Debtor currently resides at 4334 N Hazel St., Unit 1207, in Chicago, IL, but her primary debt is secured by a mortgage on real estate commonly known as 7819 S. Euclid, in Chicago. *See* Schedule, A/B, p. 10 of 58. Her attorney clarified at the 341 meeting of creditors[2] that this case was filed as a business case because the Euclid property is an investment property and that the debt secured by the property in the amount of $235,000 is more than half of the Debtor's

---

[2] A true and correct recording of the 341 meeting of creditors is in the custody of the U.S. Trustee's office. A copy may be obtained by any party in interest upon request.

4

total debt. However, when the chapter 7 trustee asked the Debtor: "Did you ever intend to live in the property at [7819] S. Euclid?," the Debtor responded: "Yes, at some point…"

14.   While that answer may not be conclusive in the matter, the mortgage document executed and recorded by the Debtor on the Euclid property is. The mortgage document expressly provides:

> **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as a Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause under hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

*See* Mortgage, attached as **Exhibit A**.[3]

15.   In a very similar case, the Bankruptcy Court correctly relied on the intention of the Debtor as stated in the mortgage documents stating: "In this case, the Court concludes that the best evidence of [the debtor's] primary purpose at the time the mortgage debt on the [mortgaged property] was incurred is the mortgage application in which, it is undisputed, [the debtor] indicated that he intended to use the property as a primary residence." *In re Grenardo*, 2012 Bankr. LEXIS 6302, at *26. As in that case, the Debtor here expressed her intent to obtain the funds to purchase the Euclid property so that she could use it as her primary residence. Therefore, that debt is a consumer debt and § 707(b) applies.

**B.    The Debtor's Case is Abusive.**

16.   Under § 707(b)(3) the Court must consider the totality of the circumstances of the Debtor's financial situation when determining whether granting relief under chapter 7 would be

---

[3] This primary residence requirement in the form mortgage ensures that the borrower intends to use, and will use, the mortgaged property as her primary residence. Mortgages on primary residences have different terms than those offered on investment properties, often including better interest rates than those available to acquire an investment property.

5

an abuse. *See* 11 U.S.C. § 707(b)(3). The Seventh Circuit noted that consideration should be given to a debtor's actual income and expenses when determining whether to dismiss a case under § 707(b)(3). *Ross–Tousey v. Neary* (*In re Ross–Tousey*), 549 F.3d 1148, 1161–62 (7th Cir. 2008). In analyzing whether dismissal of a case is warranted under the "totality of the circumstances," courts focus on several factors, including: (1) whether the petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition. *In re Lorenca*, 422 B.R. 665, 669 (Bankr. N.D. Ill. 2010) (citing *In re Cutler*, Bankr. No. 08–15568–AJM–7A, 2009 WL 2044378, at *3 (Bankr. S.D. Ind. July 9, 2009)). Additionally, "[c]ourts are not limited to considering the debtor's financial situation only as it existed on the day the petition was filed, but may, and indeed must, consider the debtor's financial situation at the time the motion to dismiss is heard." *In re Roppo*, 442 B.R. 888, 892 (Bankr. N.D. Ill. 2010) (citing *In re Pennington*, 348 B.R. 647, 651 (Bankr. D. Del. 2006)).

17. The most relevant factor when assessing abuse under § 707(b) is the debtor's ability to repay his debts. *See In re Behlke*, 358 F.3d 429, 437 (6th Cir. 2004) (finding substantial abuse [under the former, lower standard] where debtors had ability to pay 14% dividend to unsecured creditors); *In re Green*, 934 F.2d 568 (4th Cir. 1991); and *In re Lorenca*, 422 B.R. 665 (Bankr. N.D. Ill. 2010); *In re Costello*, 2002 WL 1821663 at *4 (N.D. Ill. 2002) ("f]ive of six courts of appeals to address the 'substantial abuse' standard agree that the 'primary' or 'principal' factor is the debtors' ability to repay [their] debts."). The analysis of this factor includes a determination of whether the debtor's budget includes excessive or unreasonably high expenses. *In re Bacardi*,

6

2010 WL 54760, at *4 (Bankr. N.D. Ill. Jan. 6, 2010). It also includes whether the debtor can rearrange his affairs without significant hardship to free up funds to repay a significant amount of debt under a chapter 13 plan. *See id.*

18. Here, the Debtor's income from all sources is over $100,000 per year. *See* Schedule I, Dkt. No. 1, p. 33. The Debtor claims one dependent, but her income is still well above the average household income for an American family.[4]

19. The Debtor discloses significant monthly disposable income on Schedule J in the amount of $891 that is available to repay creditors. *See id.,* p. 6 of 58. But even that number does not reflect the Debtor's actual disposable income. She includes in her deductions voluntary retirement contributions in the amount of $325 per month. However, "Bankruptcy courts, while recognizing that saving money or retirement certainly is a prudent investment, have consistently held that debtors should not be permitted to pay themselves money at the expense of creditors." *In re Parada*, 391 B.R. 492, 503 (Bankr. S.D. Fla. 2008). Therefore, the $325 in voluntarily retirement payments must be made available to repay creditors. *See* Affidavit of Andrew Hunt, attached as **Exhibit B**.

20. Even before addressing the fact that the Debtor reaffirmed her loan to retain her Mercedes-Benz, at a cost of $687.20 per month, the Debtor has monthly disposable income of $1,216 to repay creditors ($891 + $325). *See id.* That amount would enable the Debtor to repay almost $73,000 over a 60-month period. That would retire roughly three-quarters of her total unsecured debt. *See id.*

---

[4] As of the end of 2018, the U.S. Census Bureau reported the average household income in the United States was $63,179. *See* U.S. Census Bureau, Median Household Income in the United States [MEHOINUSA646N], retrieved from FRED, Federal Reserve Bank of St. Louis; https://fred.stlouisfed.org/series/MEHOINUSA646N, March 3, 2020.

21. With modest belt tightening – exchanging a high-priced luxury vehicle for a more modestly priced vehicle – the Debtor could increase the amount that she could repay to her creditors without hardship. *See id.* Thus, "a little 'good, old-fashioned belt-tightening,' would permit a substantial dividend to unsecured creditors. Fairness to those creditors demands at least that much." *In re Bacardi*, 2010 Bankr. LEXIS 3, at *13 (internal citation omitted). While the Debtor has reaffirmed the vehicle loan, she may rescind that agreement at any time prior to discharge and should do so in fairness to other creditors. *See* 11 U.S.C. § 524(c)(4).

22. It is clear that the Debtor has the ability to repay a substantial portion of her debt, and that militates in favor of dismissal. The Debtor has annual income that exceeds $100,000, and stable employment, as she has been at the same employment for 16 years. Additionally, the petition was not filed because of sudden illness, calamity, disability or unemployment, and the Debtor has not evidenced any effort at trying to repay her debts (given lack of belt-tightening and reaffirmation of a luxury vehicle at a considerable monthly expense). Considering a totality of the circumstances of the Debtor's financial situation, this case should be dismissed as an abuse of chapter 7.

WHEREFORE, the U.S. Trustee requests the Court to enter an order dismissing the Debtors' case pursuant to § 707(b) of the Bankruptcy Code and for such other relief as is just.

RESPECTFULLY SUBMITTED

DATED: <u>May 18, 2020</u>

PATRICK S. LAYNG,
UNITED STATES TRUSTEE

By: <u>/s/ David Paul Holtkamp</u>
David Paul Holtkamp, Trial Attorney
United States Department of Justice
Office of the United States Trustee
219 S. Dearborn, Room 873
Chicago, Illinois 60604
M: (312) 353-5014
C: (202) 567-1489